**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zakia Jackline Rajabian, et al., | No. CV-23-00168-PHX-MTL |
| Plaintiffs, | **ORDER** |
| v. | |
| Mercedes-Benz USA LLC, et al., | |
| Defendants. | |

**I.   BACKGROUND**

Mercedes-Benz manufactures some of the finest cars in the world. The G-Class series of sport-utility vehicles are luxurious, rare, and in very high demand. Defendant Phoenix Motor Company ("PMC") is a Mercedes-Benz dealer. In October 2021, PMC bought a 2021 Mercedes-Benz G63 vehicle from a Wholesale Exotics. As its name suggests, Wholesale Exotics is a motor vehicle wholesaler. PMC paid Wholesale Exotics $274,800 for the G63. Wholesale Exotics provided PMC a confirmation, wholesale bill of sale, and a receipt. The wholesaler forwarded the funds to others, Aljundi and Kotoukian, who were to purchase the G63 from the Mercedes-Benz dealer in Chandler, Arizona on PMC's behalf. Aljundi and Kotoukian purchased the G63 with PMC's funds and took possession of it.

But these two operators had other plans. Kotoukian sold the G63 to another Phoenix-area Mercedes-Benz dealership. Plaintiffs Zakia Jackline Rajabian and Dulceria La Bonita Wholesale, LLC (collectively "Dulceria") purchased it from that dealer and

obtained a certificate of title.

When the G63 was not delivered to PMC, the wholesaler contacted Aljundi and Kotoukian for information. Kotoukian said, "I can only tell you that he's [Aljundi] is going to keep the car and he's going to refund your money and profits . . . ." Aljundi responded, "sorry our deal did not happen as we wanted."

Upon learning this, PMC contacted law enforcement. It also used technology installed on the vehicle, called "Mercedes Me Connect," to locate the G63 in a storage locker. With this information, PMC filed an action in Arizona Superior Court asserting several state-law claims for relief against Wholesale Exotics, Aljundi, Kotoukian, and Dulceria. PMC obtained an order from the Superior Court authorizing it to enter the storage locker and recover the G63. Dulceria later appeared in the Superior Court where it contested PMC's claim of ownership over the vehicle and asserted state-law counterclaims: abuse of process, invasion of privacy, intentional interference with contractual relations, and a violation of a criminal computer tampering statute, A.R.S. § 13-2316.

On cross-motions for summary judgment, the Superior Court, in a reasoned order applying Arizona law, concluded that PMC is the rightful owner of the G63. The Superior Court held that PMC's "ownership interest accrued on October 28, 2021, the date that [Wholesale Exotics] cashed [PMC's] check and sent [PMC] a wholesale bill of sale." (Doc. 33-1 at 6.) The Superior Court continued, "[a]t that point, having paid for the car, [PMC] had and has the right to its immediate possession." (*Id*.) The Superior Court further concluded that PMC's right to possession was superior to Dulceria's, the later purchaser, even though Dulceria obtained a certificate of title and PMC did not. (*Id*. at 7-8.) Dulceria sought, but was denied, interlocutory review with the Arizona Court of Appeals and the Supreme Court of Arizona.

Dulceria next filed a complaint with this Court against PMC, Mercedes-Benz USA, and others. It asserted the same or substantially similar state-law claims that were alleged in the Superior Court, along with a federal claim for interception of electronic communications, 18 U.S.C. § 2511, relating to the use of the Mercedes me connect location

technology. (Doc. 32.) PMC now moves to dismiss for lack of subject matter jurisdiction. (Doc. 33.)

**II.    *COLORADO RIVER* ABSTENTION**

PMC moves for dismissal under the *Colorado River* abstention doctrine because this lawsuit duplicates the first-in-time Arizona state court litigation.

The notion that a federal court should hear a case within its jurisdiction is firmly rooted in the law. Indeed, there is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). But the United States Supreme Court has held that federal court abstention may be appropriate where parallel state court proceedings are in play. *Id.*; *see also R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 977–78 (9th Cir. 2011). Even where parallel state court proceedings exist, though, it is not enough for a federal court to superficially invoke the principles of "[w]ise judicial administration," "conservation of judicial resources," and the "comprehensive disposition of litigation." *Id.* at 818. Thus, the Supreme Court, in *Colorado River*, proclaimed that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 –26 (1983) (reaffirming the exceptional circumstances test).

When evaluating an abstention motion, district courts should consider eight factors to determine whether the circumstances are exceptional enough to justify a stay or dismissal: (1) whether the state or federal court first assumed jurisdiction over property at stake; (2) the inconvenience of the federal forum; (3) whether there is a preference to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law controls; (6) whether the state court proceeding can adequately protect the parties' rights; (7) the desire to avoid forum-shopping; and (8) whether the state court proceeding will resolve all issues before the federal court. *R.R. St. & Co., Inc.*, 656 F.3d at 978–79. These factors do not represent as a "mechanical checklist," but courts should

balance and apply them in a flexible way. *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988).

"Exact parallelism" of the state and federal court actions is not required. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). "It is enough if the two proceedings are substantially similar." *Id.* (cleaned up).

### A. Jurisdiction Over a *Res*

The first factor asks whether the state court has asserted jurisdiction over a *res*. PMC asserts that this factor favors abstention because the state court has asserted jurisdiction over the G63. Dulceria responds that this factor does not apply because its claims here "[do] not ask this Court to grant Plaintiffs title to the Vehicle." (Doc. 36 at 7.) Dulceria misapplies this factor. The state court did assert jurisdiction over the vehicle when it determined that PMC's right to possession is the superior one. And Dulceria does, in fact, contest ownership of the G63 in this forum. (Doc. 32 ¶¶ 75-77, 93, 95, 158.) The Court finds that this factor favors abstention.

### B. Inconvenience of the Federal Forum

In *Colorado River*, the Supreme Court observed that the district court hearing the later-filed federal case was located 300 miles away from the state court. 424 U.S. at 820. The great distance imposed an inconvenience on the parties litigating two separate cases. This Court and the Arizona Superior Court for Maricopa County, however, are in the same downtown area. The distance for parties, counsel, and trial witnesses to travel for court hearings and trial are the same.

PMC argues that this case amounts to an inconvenience because Dulceria has expanded the litigation into this Court. PMC's argument is persuasive but for other reasons addressed elsewhere in this Order. As to this factor, however, it misses the mark because the analysis for this factor considers geographic-related hardships. None are present. Thus, the Court finds that this factor tips against abstention.

### C. Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue,

thereby duplicating efforts and possibly reaching different results." *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017) (quoting *Am. Int'l Underwriters (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). Parties that present the same or similar issues to different tribunals undermine judicial efficiency, invite confusion through inconsistent rulings, and waste financial resources. Thus, "[a] substantial factor in the *Colorado River* analysis is whether there are special concerns associated with resolving the issues in a piecemeal fashion via parallel proceedings." *Id*.

PMC prompted the state court case against Dulceria to acquire possession of the G63. Dulceria answered the complaint and counterclaimed. In opposing PMC's Motion here, Dulceria observes that PMC is the only defendant that is also subject to its state-law counterclaims. This lawsuit names Mercedes-Benz USA and various other defendants that are new to this controversy and that Dulceria contends are liable along with PMC.

Dulceria also argues that abstention is not appropriate because there are only two overlapping state-law claims between the two cases. Dulceria advances six state-law claims in this case—invasion of privacy, aiding and abetting, consumer fraud, negligence, breach of implied contract, and a violation of A.R.S. § 13-2316—and one federal claim under the Wiretap Act. (Doc. 32.) Dulceria's state-law counterclaims include two of these—invasion of privacy and a violation of A.R.S. § 13-2316—and the added state-law claims for abuse of process and intentional interference with contract.

PMC characterizes this case as textbook piecemeal litigation. It maintains that the Court should abstain because both cases have two claims in common. Beyond those claims, all the original claims asserted against it here could have been advanced in Dulceria's state court counterclaims.

At bottom, this case is about which party was the rightful owner of the vehicle when PMC engaged its recovery strategy. The Superior Court applied Arizona law to the facts and determined that PMC had the right of possession. And, as mentioned, exact parallelism in the two cases is not required for abstention to apply. Even if PMC has the superior right, it is plausible that some theory of liability may lie against it and the other defendants arising

from an invasion of privacy. Even if that might favor Dulceria's position here, the fact that it could have asserted these claims in state court mitigates any such advantage. Without commenting on the merits, Dulceria could have asserted the aiding and abetting, Arizona consumer fraud, negligence, and Wiretap Act claims against PMC in state court. Moreover, Dulceria could have filed a separate complaint state court complaint against Mercedes-Benz USA, LLC ("MBUSA") and the other defendants in state court and moved to consolidate the two actions. Dulceria did no such thing. Instead, almost a year after PMC started the state court proceedings, and after it suffered a series of adverse rulings in the state court system, Dulceria filed a new case in the United States District Court. Because of the overlapping nature of the claims, the parties' possessory interest in the vehicle, and the risk of adverse rulings, the Court finds that this factor strongly favors abstention.

### D. Order In Which the Forums Obtained Jurisdiction

"[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21. Here, the Arizona Superior Court has made significant progress on adjudicating the claims. The Superior Court action was filed over a year and a half ago, and in that time, it has decided a motion to dismiss, issued a temporary restraining order, held a hearing on and issued a preliminary injunction, oversaw discovery, and ruled on cross-motions for summary judgment. Additionally, Dulceria timely counterclaimed, and, on March 20, 2023, it was granted leave to file amended counterclaims. And, significantly, both the Arizona Court of Appeals and the Supreme Court of Arizona have considered, and both declined, Dulceria's petitions to exercise special action (interlocutory) jurisdiction. As far as this Court is aware, the Superior Court has not yet issued a final judgment.

In this federal case, the Court has entered a scheduling order and discovery is in progress. No substantive rulings have been made. Beyond the instant motions, no other dispositive motions have been filed.

The Court finds that this factor favors abstention because the Superior Court first

obtained jurisdiction over the dispute and has made significantly more progress on adjudicating the claims than the progress that has been made here. *See Montanore Minerals Corp. v. Bakie*, 867 F.3d 1160, 1168 (9th Cir. 2017) (holding that the state court's significant litigation progress "strongly favors a stay").

### E. Whether Federal or State Law Controls

The issues in both cases arise from the dispute between Dulceria and PMC over which party owns the vehicle. Dulceria's claims relate to their right to possess and control the G63 at the time PMC moved to recover the vehicle. Dulceria's state-law claims for invasion of privacy, aiding and abetting, negligence, breach of implied contract, and the claim arising under the Arizona Consumer Fraud Act arise from this issue. Even if PMC has the superior ownership interest and had so at the time of PMC's recovery operation, Dulceria stated actionable claims relating to the Defendants' use of the vehicle's factory installed tracking features.

Of the seven counts asserted in the First Amended Complaint, only one, asserts a federal claim for relief. Count Six alleges that Defendant violated the federal Wiretap Act, 18 U.S.C. § 2511. Federal courts do not have exclusive jurisdiction for Wiretap Act claims. Dulceria can assert this claim in state court. *See Young v. Young*, 211 Mich. App. 446, 449 n.1, 536 N.W.2d 254, 255 n.1 (1995) (holding that, in issue of first impression for Wiretap Act claims, "[b]ecause we find nothing that suggests that Congress confined jurisdiction solely to the federal courts, we conclude that state courts have the authority to adjudicate such claims"). And as the Ninth Circuit has recognized, "[i]f the state and federal courts have concurrent jurisdiction over a claim, this factor becomes less significant. *Nakash*, 882 F.2d at 1416. Thus, the Court finds that this factor is neutral.

### F. Whether the State Court Proceedings Can Adequately Protect the Parties' Rights

As discussed above, most of Dulceria's claims here are asserted under state law, many overlap with its state-court counterclaims, and the Arizona Superior Court has concurrent jurisdiction over the lone federal claim. The Court finds that this factor favors

- 7 -

abstention.

### G. The Desire to Avoid Forum Shopping

The United States Supreme Court has observed "that the vexatious or reactive nature of either the federal or state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*." *See Moses H. Cone Mem'l Hosp.*, 460 U.S. 18 n. 20. Abstention based, at least in part, on subsequent defensive federal court litigation "has considerable merit." *Id*. "When evaluating forum shopping under Colorado River, we consider whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." *Seneca Ins. Co., Inc.*, 862 F.3d at 846.

The Court finds that this lawsuit is Dulceria's "contrived, defensive reaction" to PMC achieving successful results in the Arizona state court system. *See Moses H. Cone Mem. Hosp.*, 460 U.S. at 18 n. 20. Each claim asserted in this case against PMC could have been brought as a counterclaim in the Superior Court. Each Defendant that is new to this case could have been added by Dulceria in the state court proceedings. Dulceria chose not to proceed that way. Instead, only after PMC prevailed at the Superior Court and successfully defended against interlocutory appeals did Dulceria initiate federal court proceedings. This federal-court litigation is rationally explained as Dulceria's attempt to find a new playing field with a new court that might provide a different result. The Court finds that this factor supports abstention.

### H. Whether the State Court Proceedings Can Resolve All Issues Before This Court

Dulceria argues that the state court cannot resolve all its asserted claims, and, for this reason, abstention should be denied. But Dulceria again answers the wrong question. As this Court has already discussed, all the claims original to this action could have been asserted in the state court. The Court finds that this factor favors abstention.

### I. Balancing of the Abstention Factors

On balance, the Court finds that the *Colorado River* factors favor abstention. While

the federal forum does not pose an inconvenience, other factors demonstrate that this is an exceptional case warranting abstention. Most importantly, the Court finds that Dulceria filed this lawsuit after suffering setbacks in the Arizona Superior Court. The Superior Court ruled that PMC's right to possess the G63 is superior to Dulceria's right. This action asserts state-law claims, with a single federal claim in the mix to justify federal subject matter jurisdiction. These claims were either asserted in the Superior Court or they could have been asserted there. They overwhelmingly involve matters of state law, including the right to possess the vehicle at issue and common law tort theories. The state court can adjudicate these issues and protect the parties' rights. Proceeding with litigation in federal court will duplicate discovery tasks and expense that are already underway in the state court. There is a substantial risk that rulings in this case and in the state case will conflict with one another, which would undermine the judicial process and waste resources.

Upon finding that it should abstain under *Colorado River*, the District Court must stay the case. *Montanore Minerals Corp v. Bakie*, 867 F.3d 1160, 1171 (9th Cir. 2017). At the appropriate time, the Court will enter an order staying this action pending the outcome of the state court proceedings.

**III.   MERCEDES-BENZ USA, LLC'S MOTION TO COMPEL ARBITRATION**

In its First Amended Complaint, Dulceria claims that it "legally purchased" the G63 from Mercedes Benz of North Scottsdale. (Doc. 32 ¶ 93.) While it had possession of the G63, it argues that an implied-in-fact contract existed between it and MBUSA protecting Dulceria against unauthorized use of the pre-installed Mercedes Me Connect service. Dulceria asserts that MBUSA wrongfully allowed PMC access the Mercedes Me Connect feature, allowing PMC to track the vehicle and ultimately recover it from the storage locker. (*Id.* ¶¶ 26, 46, 51, 52, 63–80.) Dulceria asserts these claims against MBUSA: invasion of privacy, aiding and abetting, negligence, and breach of implied contract, all under Arizona common law, as well as violations of the Arizona Consumer Fraud Act, A.R.S. § 44-1521, and the federal Wiretap Act, 18 U.S.C. § 2511. PMC now moves for an order compelling arbitration under Mercedes Me Connect standard terms and conditions'

arbitration clause. (Doc. 52.)

### A. Legal Standard

The Federal Arbitration Act ("FAA") was enacted in response to widespread judicial hostility toward arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Section 2 of the FAA states that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has described this provision of the FAA as both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 339 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

In line with these principles, courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms. *Concepcion*, 563 U.S. at 339 (citations and quotations omitted); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 1130 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). The Court's role under the FAA is thus limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.*

"When evaluating a motion to compel arbitration, courts treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Totten v. Kellogg Brown & Root, LLC*, 152 F. Supp. 3d 1243, 1249 (C.D. Cal. 2016) (internal citation omitted). Generally, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-*

*Alabama v. Randolph*, 531 U.S. 79, 91 (2000). But where the issue is whether there is an agreement to arbitrate, the party seeking to enforce an arbitration agreement bears the burden of showing that it exists. *See, e.g.*, *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962–64 (9th Cir. 2007). Courts apply state-law principles to determine whether an agreement to arbitrate is valid. *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002).

### B.      Validity of the Arbitration Agreement

According to the First Amended Complaint, when Dulceria purchased the G63 from Mercedes Benz of North Scottsdale, it executed various documents for the sale of the vehicle and dealer add-ons, including a vehicle buyer's order, a retail installment sale contract, an appearance warranty, and a premier protection package. (Doc. 32 ¶¶ 18–21.) The First Amended Complaint further alleges that, "[w]hen Plaintiffs signed up to use the Mercedes Me Connect services, the parties entered into an implied if not express contract." (*Id.* ¶ 134.) "Part of the terms of that contract are contained in the Mercedes Privacy Policy, as well as the terms and conditions associated with the Mercedes Me Connect application." (*Id.* ¶ 135.)

Another of those terms, asserted by MBUSA in its Motion, is this:

> 13.1. DISPUTE RESOLUTION. ANY DISPUTE OR CLAIM ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THE TERMS OF USE (WHETHER FOR BREACH OF CONTRACT, TORTIOUS CONDUCT OR OTHERWISE) SHALL, TO THE EXTENT PERMITTED BY LAW, BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, EXCEPT THAT THE CUSTOMER MAY ASSERT CLAIMS IN SMALL CLAIMS COURT IF CLAIMS QUALIFY. . . .

(Doc. 52-1 at 11.)

And this notice that appears at the top of the Mercedes Me Connect Terms of Use:

> **THESE TERMS OF USE FOR THE MERCEDES ME CONNECT SERVICES CONTAIN A PROVISION THAT GENERALLY REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO**

**RESOLVE DISPUTES, RATHER THAN JURY TRIALS AND CLASS ACTIONS, AND ALSO LIMITS THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE. PLEASE SEE CLAUSE 13 FOR INFORMATION.**

(*Id.* at 1 (emphasis in original).)

Dulceria alleges that it legally purchased the G63, signed a sales contract, a retail installment sales contract, and purchase contracts for various services and warranties. Dulceria was aware of the Mercedes Me Connect features of the G63. Dulceria asserts that it "provided personal, confidential information to Mercedes in order to sign up for the Mercedes Me Connect application's services." (Doc. 32 ¶ 124.) The First Amended Complaint admits that the terms of the alleged implied contract include the standard terms and conditions for the Mercedes Me Connect service. (Doc. 32 ¶ 135.) Thus, according to MBUSA, Dulceria impliedly agreed to the Mercedes Me Connect terms and conditions, including the arbitration clause.

Dulceria opposes the Motion for the simple reason that, in this litigation, MBUSA denies the implied contract exists. MBUSA cannot invoke a provision in a contract that MBUSA denies exists altogether. In its Answer, MBUSA pleaded that it "lacks knowledge or information sufficient to form a belief" as to whether such an express or implied contract exists. (Doc. 34 ¶¶ 134, 135.)

The threshold inquiry in any mandatory arbitration analysis is whether a valid arbitration agreement exists. As the parties dispute the existence of a contract, the burden falls on MBUSA to prove that a valid arbitration agreement exists. On this record, MBUSA has not satisfied its burden. As a threshold issue, MBUSA denies the existence of a contract between the parties. Conceptual problems preclude the Court from mandating that a party participate in arbitration when the opposing party and movant denies that a contract between them exists. Next, nothing in the record suggests that Dulceria is a party to the specific Mercedes Me Connect terms attached to the Motion. Although the First Amended Complaint alleges a contract with certain terms exists between Dulceria and MBUSA, it

does not attach a copy of the contract or otherwise identify one. The document attached to MBUSA's Motion does not indicate that Dulceria is a party to it, let alone agreed to any of its terms or otherwise manifested consent to the arbitration provision. *Compare Am. Fam. Mut. Ins. Co. v. Tamko Bldg. Products, Inc.*, 179 F. Supp. 3d 1121, 1126 (D. Colo. 2016) (finding arbitration agreement enforceable where plaintiff "created a contract implied in fact" when opening product packaging with an arbitration clause printed on the wrapper). For these reasons, the Court will deny MBUSA's Motion, without prejudice to refiling.

## IV. DULCERIA'S FEDERAL WIRETAP ACT CLAIM

Count Six of the First Amended Complaint alleges a violation of the Wiretap Act. That law makes it a crime for a person to intentionally intercept "any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). A victim of this prohibited conduct "may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." *Id*. § 2520(a). The First Amended Complaint contends that Defendants violated this law by monitoring the vehicle's location with the Mercedes Me Connect technology, and later disclosing the vehicle's location to law enforcement and the Arizona Superior Court. (Doc. 32 ¶¶ 141–45.)

In *Gonzales v. Uber Technologies, Inc.*, 305 F. Supp. 3d 1078 (N.D. Cal. 2018), the court analyzed the statutory language and concluded that the Wiretap Act does not apply to geolocation data collected from a ridesharing app. The court observed that the term "'Intercept' 'means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device.'" *Id*. at 1084 (quoting 18 U.S.C. § 2510(4)). The Act further "defines 'contents' as 'includ[ing] any information concerning the substance, purport, or meaning of that communication.'" *Id*. (quoting 18 U.S.C. § 2510(8)). "'[C]ontents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication.'" *Id*. (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)).

Defendants argue, in a supplemental brief, that the claim should be dismissed

because the Wiretap Act only prohibits the unauthorized interception of the content of communications, not geolocation data. Thus, they argue that the Wiretap Act fails to state a claim. Dulceria responds in opposition, stating that Defendants' interception of the geolocation is actionable because they directly engaged the Mercedes Me Connect system and used the data to determine the vehicle's location.

This issue will benefit from further discovery and briefing at the summary judgment stage. For now, the Court will not take any action on this issue.

## V. MOTION TO FILE A SECOND AMENDED COMPLAINT

The final item for the Court's consideration is Dulceria's Motion for Leave to File a Second Amended Complaint (Doc. 70). It now wishes to add a Declaratory Judgment Act claim against PMC seeking a declaration that it is the G63's rightful owner. It also seeks to add a claim against all defendants for a violation of the Stored Communications Act, 18 U.S.C. § 2701.

Under Rule 15(a)(2), Fed. R. Civ. P., "a party may amend its pleading only with the opposing party's written consent or the court's leave." Because PMC does not consent to the amendment, Dulceria seeks leave of court.

Earlier in this case, the Court established a deadline for amending pleadings, June 11, 2023. That deadline has come and gone. "Where, as here, a party seeks leave to amend after the deadline set in the scheduling order has passed, the party's request is judged under Federal Rule of Civil Procedure ('FRCP') 16's 'good cause' standard rather than the 'liberal amendment policy' of FRCP 15(a)." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017). "The central inquiry under Fed. R. Civ. P. 16(b)(4) is whether the requesting party was diligent in seeking the amendment." *Id*.

The Court will deny Dulceria's Motion because it has failed to show good cause. Dulceria has had an opportunity to amend. Both proposed claims could have been asserted in Arizona Superior Court, in the original complaint filed here, or in the First Amended Complaint. Throughout the litigation, ownership of the vehicle has been an issue. Dulceria could have asserted its proposed declaratory judgment claim at any point, before the

amendment deadline, or in state court. All the facts necessary to assert the Stored Communications Act claim were known when Dulceria first asserted its Wiretap Act claim. Indeed, this proposed claim mirrors the Wiretap Act claim, such that Defendants' alleged use of the Mercedes Me Connect feature undergirds this theory of liability. (Doc. 70 ¶¶ 184–202.)

Should the Court allow another amended pleading, Defendants will need to evaluate the claims, answer, or file dispositive motions. Defendants have already signaled their intent to move to dismiss for failure to state a claim, should the Court grant the Motion for Leave. Defendants' opposition to the Motion for Leave argues that the Stored Communications Act claim fails to state a claim because it depends on the use of geolocation data, which may not be actionable. Defendants also assert that the declaratory judgment act claim represents an impermissible appeal from the Superior Court's ruling that PMC's ownership interest is superior to Dulceria's. Without commenting on the merits of these arguments, the Court finds that adjudicating these issues at the motion to dismiss stage would waste resources both by the parties and the Court and delay the orderly disposition of this case.

Moreover, discovery in this case is well underway. Adding two claims at this stage in the case will require additional discovery activity and the associated financial cost. Defendants will be prejudiced in the event of a discovery do-over, whether that means new written discovery or depositions that have already been completed.

Finally, the Court agrees with PMC that the proposed declaratory relief claim undermines Dulceria's arguments against *Colorado River* abstention. Asking this Court to make a ruling on which party owns the G63 invites even greater risk of inconsistent orders. The Court also notes, without weighing in on the merits, that it is guided by the *Brillhart* factors. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672 (9th Cir. 2005) ("The district courts discretion to hear declaratory actions over which it has jurisdiction is guided by the Supreme Court's announcements in *Brillhart*.") (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942).) The *Brillhart* factors "are non-exclusive and state that, (1) the district

court should avoid needless determination of state law issues; (2) it should discourage litigants from filing declaratory actions as a means of forum shopping; and (3) it should avoid duplicative litigation." *Id.* (internal citations and quotations omitted).

The earlier-filed case pending at the Arizona Superior Court has already, though without a final judgment, adjudicated the ownership issue. Asking this Court to review and declare the owner of the G63 duplicates all the work that has already taken place in state court. It will cause the needless expenditure of resources for the Parties and the judicial system. And it invites inconsistent rulings on the same issue. Essentially, it asks this Court to take a fresh look at the issue, hoping to get a better result. This maneuver represents classic forum-shopping and reactive litigation.

VI.     **CONCLUSION**

For the stated reasons, the Court will invoke the *Colorado River* abstention doctrine. MBUSA's Motion to Compel Arbitration and Request for Immediate Stay will be denied.

The Court finds it necessary to order briefing on how this case should proceed and set a status conference. To that end, the Parties must confer and file a Joint Prehearing Statement covering at least the items below:

A.      Are both the state law and federal claims subject to abstention?

B.      How should the Court proceed with any claims that are not stayed or dismissed?

C.      What is the status of the state court litigation?

D.      The Parties are encouraged to address any other information that may be useful to managing this case going forward.

Accordingly,

**IT IS ORDERED** that Phoenix Motor Company Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 33) is **GRANTED** insofar as this action shall be stayed because the Court will invoke the *Colorado River* abstention doctrine. After receiving the parties' supplemental briefs, the Court will determine whether another remedy is appropriate.

**IT IS FURTHER ORDERED** that Defendant Mercedes-Benz USA, LLC's Motion to Compel Arbitration and Request for Immediate Stay (Doc. 52) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** denying Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 70).

**IT IS FURTHER ORDERED** setting an in-person status conference for Tuesday, December 19, 2023, at 3:00 p.m. in Courtroom 504, Sandra Day O'Connor United States Courthouse, 401 West Washington Street, Phoenix, Arizona 85003.

**IT IS FURTHER ORDERED** that the Parties must file a Joint Prehearing Statement, as described above, no later than Wednesday, December 13, 2023, at 5:00 p.m.

**IT IS FINALLY ORDERED** that the Parties shall provide notice of this Order to the Arizona Superior Court no later than Tuesday, November 28, 2023. The Parties shall contemporaneously file a notice of compliance with this Court.

Dated this 22nd day of November 2023.

Michael T. Liburdi
United States District Judge